[Civ. No. 2437. Fifth Dist., Feb. 13, 1975.]

LARRY A. MACHADO, Petitioner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Jensen & Gaarde and Charles J. Peluso for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, James T. McNally and Susan Ranken Bunting, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**FRANSON, J.**—Petition for writ of mandate to review respondent's denial of a motion to suppress evidence prior to trial. Writ granted.

The fundamental question is whether, absent exigent circumstances, the failure of police officers to comply with the notice requirements of Penal Code section 1531 in securing a house until a search warrant is obtained, renders illegal the subsequent seizure of contraband in the house pursuant to the warrant. We hold that it does.

### STATEMENT OF THE CASE

An information was filed in the respondent court charging petitioner with a violation of Health and Safety Code section 11359, possession of marijuana for sale. A Penal Code section 1538.5 motion to suppress

evidence was denied by respondent. A timely petition for review of respondent's ruling was filed with this court and we issued an order to show cause.

## STATEMENT OF FACTS

On May 22, 1974, just before 2 p.m., Detective Matt of the Stanislaus County sheriff's office was in the vicinity of petitioner's residence at 614 Coldwell. The residence was under surveillance because it was suspected that a delivery of contraband might be made there. In particular, Detective Matt was looking for Richard Potter. Potter and another man arrived at 614 Coldwell. When they left, Detectives Matt and Holloway followed them to Potter's residence at 417 Bodem where they stopped Potter and apparently found marijuana on his person.

Detective Matt radioed Deputies Benjamin and Richards and instructed them to secure the 614 Coldwell premises until a search warrant could be obtained.

At 2 p.m., Deputy Richards and Officer Sanders of the Modesto Police Department went to the front door of 614 Coldwell and Deputy Benjamin went to the back door. Richards knocked three or four times for approximately 45 seconds on the front door, and then he went around to the back door. Officer Sanders remained at the front door, but he did not knock again or otherwise announce his purpose for being there.

When Richards got to the back of the house, he opened the rear door and he and Benjamin entered the house and walked through the kitchen into the living room. Petitioner had just opened the front door where Officer Sanders was standing on the outside. Richards came up behind petitioner, identified himself and said they were securing the residence because other officers were in the process of obtaining a search warrant. At the time of the entry, Deputy Benjamin was bearded, and he and Richards were in street clothes.

There were no verbal statements or announcements by any of the officers prior to the entry by Richards. It was stipulated at the 1538.5 hearing that there was no knocking or announcement at the rear door by the deputies. Before entering they heard no talking, screaming, running footsteps or flushing of toilets. They had no information that the persons in the house had weapons. Because of these facts, the district attorney stipulated that the initial entry of the house was illegal in that the officers

failed to comply with the "knock-and-notice" provisions of the Penal Code.[1]

The sheriffs secured the house for three hours until Detective Matt arrived with a search warrant and the marijuana which petitioner seeks to have suppressed was discovered. During that three hours, petitioner was confined to a chair in his house.

## DISCUSSION

■ An entry of a house in violation of the notice requirements of Penal Code sections 844 or 1531 renders any following search and seizure unreasonable within the meaning of the Fourth Amendment. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 290 [78 Cal.Rptr. 504, 455 P.2d 432].)

The notice requirements rest upon two doctrinal bases: first, the protection of an individual's right to privacy in his house; and second, the prevention of possible violent responses by a startled and fearful householder suddenly confronted with unknown persons breaking in for unannounced reasons. (*Greven* v. *Superior Court, supra,* 71 Cal.2d at p. 292; *People* v. *Dumas,* 9 Cal.3d 871, 878-879 [109 Cal.Rptr. 304, 512 P.2d 1208].) The danger of such a confrontation is highlighted in this case where two officers in street clothes and one with a beard walked unannounced through the back door and into the living room of petitioner's house.

The People rely on *Krauss* v. *Superior Court,* 5 Cal.3d 418 [96 Cal.Rptr. 455, 487 P.2d 1023], to uphold the search of the house, notwithstanding the illegal entry. In *Krauss,* a motel manager telephoned the police after she observed marijuana in a guest's room. An officer responded to the call and entered the room with the manager's permission and inspected the marijuana. He then left and obtained a search warrant for the room, but recited only the facts related to him by the motel manager. The subsequent search, seizure and arrest pursuant to the warrant was upheld on the basis that the illegal entry did not taint

---

[1]Penal Code section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

Penal Code section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

the later seizure because the officer obtained the warrant using only the information that he lawfully had acquired from the motel manager before illegally entering the room. *Krauss* is inapposite to the present case because it did not involve a violation of the statutory notice rules governing the entry of a residence to effect an arrest or to execute a search warrant; there was no danger of confrontation between the officer and the occupant of the room.

▆▆▆ In the present case, the nexus between the original illegal entry into the house and the execution of the search warrant is clear: the police entered the house for the sole purpose of securing the premises until a warrant could be obtained; at that time efforts to obtain the warrant already had begun. Thus, the initial entry must be viewed as part of the warrant process. Realistically, the execution of the warrant began at 2 p.m. when the house was secured.

Had the entry by the officers been with search warrant in hand, the evidence seized within the house, assuming noncompliance with the notice provisions of Penal Code section 1531, would have been suppressed. We find no reasonable basis for holding that the securing of the house and detention of petitioner for three hours pending the preparation and execution of the warrant removes the taint of the illegal entry.[2]

In *United States* v. *Griffin* (6th Cir. 1974) 502 F.2d 959 (cert. den., 419 U.S. 1050 [42 L.Ed.2d 645, 95 S.Ct. 626]) it was held that absent exigent circumstances warranting entry without a search warrant, drugs which had been discovered in defendant's apartment after a warrantless entry were properly suppressed even though the government had, before the entry, set in motion the processes which led to the issuance of a search warrant which was not based on any facts discovered as a result of the illegal entry. In declining to recognize the government's argument that there was no causal relationship between the entry and the seizure and that it was inevitable that the drugs would have been discovered pursuant to the warrant, the reviewing court stated that "[a]ny other view would tend in actual practice to emasculate the search warrant requirement of the Fourth Amendment."

---

[2] Two recent cases have considered the applicability of sections 844 and 1531 to situations where a house was secured pending receipt of a search warrant. (*People* v. *Freeny*, 37 Cal.App.3d 20 [112 Cal.Rptr. 33]; *Ferdin* v. *Superior Court*, 36 Cal.App.3d 774 [112 Cal.Rptr. 66].) The clear implication in both cases is that the courts felt that the knock-and-notice requirements had to be complied with when officers were entering to secure a house pending the arrival of a search warrant. *Ferdin* specifically recognized that the time the danger of violent confrontation exists is when the entry is made to secure the house and not when the warrant later arrives. (36 Cal.App.3d at p. 780.)

Similarly, if we should uphold the People's argument in this case, then the police could dispense with the notice requirements in any case where they had grounds to secure a house and arrest an occupant merely by deferring the arrival of the warrant to a later time. Such a rule would emasculate the notice requirements of Penal Code section 1531 and would encourage illegal police conduct contrary to the policy behind the exclusionary rule.

Let a peremptory writ of mandate issue commanding respondent to suppress the evidence seized at petitioner's house on May 22, 1974.

Brown (G. A.), P. J., and Gargano, J., concurred.