Opinion
 

 THE COURT.—
 

 In this case we conclude that a reviewing court has jurisdiction to rule upon a petition for an alternative writ of mandate sought pursuant to Penal Code section 1538.5, subdivision (o), when defendant has been found mentally incompetent to stand trial and committed to a state mental institution after the hearing on his motion to suppress evidence and the filing of the petition challenging the propriety of the lower court’s ruling.
 

 The People seek a writ of mandate or prohibition pursuant to Penal Code section 1538.5, subdivision (o), to compel the superior court to vacate its order of March 28, 1977, granting the motion of the real party in interest (defendant) to suppress all evidence seized in a search of his residence pursuant to a search warrant except for the portion of the order
 
 *411
 
 suppressing two sets of keys and a Kodak Instamatic camera and its contents (items 7, 8 and 10 in the return to the search warrant). We issued an alternative writ of mandate.
 

 Defendant Ken Richard Hulbert is charged with murder (Pen. Code, § 187), four counts of kidnaping for the purpose of robbery (Pen. Code, § 209), two counts of robbery (Pen. Code, §211), two counts of rape (Pen. Code, § 261, subd. 3), assault with intent to commit murder (Pen. Code, § 217), three counts of oral copulation (Pen. Code, § 288a) and sodomy (Pen. Code, § 286).
 

 The pretrial Penal Code section 1538.5 motion to suppress this evidence was granted upon the basis that the entry into defendant’s residence violated Penal Code section 844 and the securing of the premises was an illegal seizure of the premises. The superior court found that (1) all the witnesses were credible and (2) the search warrant was supported by a valid affidavit containing sufficient probable cause.
 

 The People timely filed a petition for a writ of mandate or prohibition pursuant to Penal Code section 1538.5, subdivision (o), to compel the court below to deny defendant’s motion to suppress.
 

 The initial question presented in this appeal is one of first impression. It is whether this court has jurisdiction to rule upon a petition for an alternative writ of mandate sought pursuant to Penal Code section 1538.5, subdivision (o), when defendant has been found mentally incompetent to stand trial and committed to a state mental institution after the hearing on his motion to suppress evidence and the filing of the petition challenging the propriety of the lower court’s ruling. We conclude that we have jurisdiction.
 

 After a jury determined in a hearing held pursuant to Penal Code sections 1368.1 and 1369 that defendant was mentally competent to stand trial, defense counsel made a pretrial motion to suppress evidence pursuant to Penal Code section 1538.5. On March 28, 1977, the lower court made the ruling complained of here granting a portion of the Penal Code section 1538.5 motion to suppress evidence.
 

 On the following day, March 29, 1977, criminal proceedings were suspended and the court ordered a second hearing to determine whether defendant was competent to stand trial. On April 4, 1977, the People filed a notice of intention to file a petition for a writ of mandate or
 
 *412
 
 prohibition seeking appellate review of the ruling on the search and seizure motion. The instant petition for a writ of mandate or prohibition was filed on April 27, 1977.
 

 On May 4, 1977, defendant was found to be mentally incompetent to stand trial and the court ordered him to be transported to Atascadero State Hospital. The alternative writ of mandate issued on May 31, 1977.
 

 We do not agree with respondent’s contention that this petition should be denied because he has been committed pursuant to Penal Code section 1368. That section states, in part:
 

 “(a) If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent....
 

 “(b) If counsel informs the court that he believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant’s mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369. ...
 

 “(c) Except as provided in Section 1368.1, when an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined.”
 

 Penal Code section 1368.1 provides, in part: “(a) If the action is on a complaint charging a felony, the hearing to determine mental competence may not be held until after the information or indictment has been filed. A demurrer or a motion under Section 995 or 1538.5 may thereafter be made by counsel for the defendant, even though a proceeding to determine the defendant’s mental competence is pending....”
 

 The California Supreme Court observed in
 
 Hale
 
 v.
 
 Superior Court,
 
 15 Cal.3d 221, 227-228 [124 Cal.Rptr. 57, 539 P.2d 817]: “ ‘Both courts and commentators have noted the desirability of permitting some proceedings to go forward despite the defendant’s- incompetency. For instance, § 4.06 (3) of the Model Penal Code would permit an incompetent accused’s attorney to contest any issue “susceptible of fair determination
 
 *413
 
 prior to trial and without the personal participation of the defendant.” An alternative draft of § 4.06 (4) of the Model Penal Code would also permit an evidentiary hearing at which certain defenses, not including lack of criminal responsibility, could be raised by defense counsel on the basis of which the court might quash the indictment. Some States have statutory provisions permitting pretrial motions to be made or even allowing the incompetent defendant a trial at which to establish his innocence, without permitting a conviction. We do not read this Court’s previous decisions to preclude the States from allowing, at a minimum, an incompetent defendant to raise certain defenses such as insufficiency of the indictment, or make certain pretrial motions through counsel.’
 
 (Jackson
 
 v.
 
 Indiana, supra,
 
 406 U.S. at pp. 740-741 [32 L.Ed.2d at p. 452], fns. omitted.)”
 

 The statutory requirement that “the hearing to determine mental competence may not be held until after the information or indictment has been filed” was found constitutional in
 
 Chambers
 
 v.
 
 Municipal Court,
 
 43 Cal.App.3d 809, 814 [118 Cal.Rptr. 120], and
 
 Hale
 
 v.
 
 Superior Court, supra,
 
 15 Cal.3d 221, 229.
 

 By passing the statute, the Legislature indicated its determination that persons should not be committed for mental incompetence through the criminal process without any independent assessment by a magistrate of the sufficiency of the criminal charges.
 
 (Chambers
 
 v.
 
 Municipal Court, supra,
 
 43 Cal.App.3d 809, 813.)
 

 It is clear from a reading of the statute that the Legislature did not intend the magistrate to have unbridled discretion in ruling on this issue. Provision is made for defense counsel to make a Penal Code section 995 motion even though a proceeding to determine defendant’s mental competence is pending. (Pen. Code, § 1368.1, subd. (a).)
 

 Although not specifically provided in the statute, common sense indicates that defendant’s right of review does not end there, but would encompass defendant’s filing of a petition for a writ of prohibition in the Court of Appeal to review the superior court’s decision not to set aside the indictment or information.
 

 The same reasoning applies to a pretrial Penal Code section 1538.5 motion to suppress. It is specifically provided in Penal Code section 1368.1, subdivision (a), that defense counsel may make a Penal Code
 
 *414
 
 section 1538.5 motion to suppress evidence even though a proceeding to determine defendant’s mental competency is pending.
 

 If the motion to suppress is denied in whole or in part, defendant has a statutory right under Penal Code section 1538.5, subdivision (i), to a review of the validity of this decision by means of an extraordinary writ of mandate or prohibition. If the motion to suppress is granted in whole or in part, the People have a statutory right under Penal Code section 1538.5, subdivision (o), to a review of the validity of this decision by filing a petition for a writ of mandate or prohibition in this court.
 

 The statutory right to a review of the superior court’s ruling on the Penal Code section 1538.5 motion to suppress does not conflict with the statutes under consideration here. Penal Code section 1367 states, “A person cannot be tried or adjudged to punishment while he is mentally incompetent.” We are here dealing with pretrial motions to suppress evidence, not the determination of guilt or innocence. Furthermore, it states in Penal Code section 1368.1, subdivision (c), that the court may hear any matter capable of fair determination without the personal participation of the defendant in ruling on a demurrer or motion under Penal Code sections 995 or 1538.5 while a proceeding to determine the defendant’s mental competence is pending.
 

 Consequently, we hold that a Court of Appeal has jurisdiction to rule upon a petition for an alternative writ of mandate sought pursuant to Penal Code section 1538.5, subdivision (o), when defendant has been found mentally incompetent to stand trial and committed to a state mental institution after the hearing on the Penal Code section 1538.5 motion to suppress evidence and the filing of the petition.
 

 It is irrelevant that the alternative writ of mandate was actually issued after defendant was found to be mentally incompetent to stand trial. The right to a litigant’s review of a lower court’s ruling should not depend on the state of the appellate court’s calendar and the speed with which it grants writ petitions.
 

 From this point on, this opinion lacks precedential value. The following issues are a matter of interest only to the parties to this litigation. They present no issues worthy of publication under rule 976, California Rules of Court. Nevertheless, since we are denied the luxury
 
 *415
 
 of partial publication of an opinion,
 
 [1]
 
 we proceed with a full discussion of those issues.
 

 Defendant also contends that we should deny the writ petition because he claimed his right to represent himself under
 
 Faretta
 
 v.
 
 California,
 
 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], after the lower court ruled on the Penal Code section 1538.5 motion but prior to the suspension of proceedings. This argument is not properly before us since there is no indication in the record that defendant made such a request.
 

 We now turn to the People’s contention that the lower court erred in suppressing most of the evidence seized in defendant’s Fullerton residence during the execution of the search warrant because the entry into his residence violated Penal Code section 844 and the securing of the residence was an illegal seizure of the house and its contents.
 

 Evidence presented at the hearing on the Penal Code section 1538.5 motion established that on the morning of January 5, 1977, the partially nude body of Gina Marie Tisher was found in her automobile which was parked in the carport of a Fullerton apartment complex. She had been strangled to death. During the ensuing police investigation, a number of police reports of other murders, rapes and kidnapings, in which a similar modus operand! had been employed, were examined.
 

 On the morning of January 30, 1977, Mr. Rockenback, a counselor for defendant and his wife Mollye, went to the Fullerton Police Department and told Fullerton Police Investigator DeLeon Schauperl that Mollye had called his residence on the previous evening and stated she suspected her husband had been kidnaping and raping women and she was concerned for her welfare and the welfare of her two children. She told Rockenback that she had been discussing her suspicions with her husband.
 

 
 *416
 
 Prior to the telephone call, Mrs. Rockenback had gone to defendant’s Fullerton residence and Mollye had given her an envelope containing several items of women’s jewelry. She told Mrs. Rockenback to see that it “got to the right people if anything happened to her.”
 

 Mr. Rockenback gave the envelope containing the jewelry to Investigator Schauperl, who recognized a wristwatch engraved with the name Terri Muzic as matching the description in one of the crime reports of a watch taken from a kidnap victim named Terri Muzic.
 

 Rockenback gave Officer Schauperl a description of defendant that matched the description the victims in a number of the crime reports gave of their assailant. At 9 a.m. he identified a picture of defendant as a picture of Mollye’s husband.
 

 Officer Schauperl constructed a photographic lineup and showed it to Carmen Banderas. She identified defendant’s photograph as a picture of the person who left her in a ditch unconscious and partially nude on January 6, 1977, after kidnaping, raping and strangling her.
 

 Upon receiving this identification, Officer Schauperl immediately proceeded to defendant’s Fullerton residence with at least eight other officers. After the officers stationed themselves outside the residence, Mr. Rockenback made a prearranged telephone call to the residence. No one answered the phone. The garage door was open and there were no vehicles in the garage, in the driveway or on the street. No activity was observed in the vicinity of the house. Investigator Schauperl formed the opinion that defendant was not at home.
 

 Investigator Schauperl testified that he entered defendant’s residence through the unlocked front door with another officer to look for Mollye and the children because he was concerned for their safety. After walking through the residence and looking into rooms and closets for less than a minute, they exited the residence. He testified he did not enter the residence to arrest defendant.
 

 An officer was stationed in the driveway of the residence to secure the residence while a search warrant was sought. Defendant was arrested a short time later when officers stopped his vehicle. After stopping at the residence to obtain a bottle of milk and diapers, Mollye went to the police station to converse with the officers. The police officer who was transporting Mollye went into the residence with her when she obtained
 
 *417
 
 the milk and diapers. After they left, an officer remained outside the residence to secure it.
 

 A short time later, the landlady’s daughter arrived at the residence to pick up insurance papers for her mother. The officer entered the residence with her while she obtained the papers and they both remained in the front room. An officer stayed in the front room from this point until shortly after 7 p.m. when the search warrant that had been obtained was executed.
 

 “ ‘ “A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court
 
 sitting as a finder of fact.” (People
 
 v.
 
 Heard
 
 (1968) 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374.)’
 
 (People
 
 v.
 
 West
 
 (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385,
 
 477
 
 P.2d 409].) (Italics added.) In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the . trial court. On appeal all presumptions favor the exercise of that power, and the trial court’s findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.”
 
 (People
 
 v.
 
 Lawler, 9
 
 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)
 

 Penal Code section 844 provides, in part, “To make an arrest ... a peace-officer . . . may break, open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him. to be, after haying demanded admittance and explained the purpose for which admittance is desired.”
 

 It is clear that there was no compliance with Penal Code section 844. We need not determine whether compliance was excused because the entry was prompted by the motive of preserving life and reasonably appeared to be necessary for that purpose rather than a desire to arrest defendant, since the officers, who were present in the residence for less than a minute, failed to observe any contraband or any other incriminating evidence. This entry was not even mentioned in the search warrant affidavit (People’s exhibit 3).
 

 The entry had no demonstrable effect on the issuance of the search warrant, which the lower court found was supported by a valid affidavit containing sufficient probable cause and it is irrelevant whether the entry was technically in violation of the statutory knock and notice require
 
 *418
 
 ments. Consequently, tthe lower court erred in suppressing most of the evidence seized when the search warrant was executed.
 

 Defendant’s reliance on
 
 Machado
 
 v.
 
 Superior Court,
 
 45 Cal.App.3d 316 [119 Cal.Rptr. 344], is misplaced. That case is distinguishable from the case at bench. In
 
 Machado
 
 petitioner was present in the residence when the officers entered without complying with the “knock and notice” provisions of Penal Code sections 844 or 1531 and secured the premises for three hours pending the arrival of the search warrant. During that three-hour period, petitioner was confined to a chair in his house.
 

 In
 
 Machado
 
 the court observed that realistically the execution of the warrant began when the house was secured because the police entered for the sole purpose of securing the premises until a warrant could be obtained when efforts to obtain the warrant had already begun. Noting that the evidence would have been suppressed if the entry by the officers had been with search warrant in hand, the court held that there was no reasonable basis for finding that “the securing of the house and detention of petitioner for three hours pending the preparation and execution of the.warrant removes the taint of the illegal entry.”
 
 (Machado,
 
 at p. 320.)
 

 It is clear in the case at bench that entry into defendant’s residence was not for the purpose of securing the premises until a search warrant could be obtained. Efforts to obtain a search warrant were begun after the entry and the residence, which was unoccupied, was initially secured by an officer stationed in the driveway.
 

 The People’s other contention, that the officers acted reasonably in their securing of the premises while they obtained a search warrant, is also well taken.
 

 The landmark case in this area,
 
 People
 
 v.
 
 Shuey,
 
 13 Cal.3d 835 [120 Cal.Rptr. 83, 533 P.2d 211], holds that the “securing” of premises prior to obtaining a search warrant where there is no probable cause to arrest the suspect and no exigent circumstances results in a “seizure” of the premises and the evidence illegally seized when the search warrant is executed must be suppressed. In
 
 Shuey
 
 the officer had probable cause to believe the residence contained contraband five days before they secured the premises.
 

 As soon as the officers had probable cause to arrest defendant in the instant case, they proceeded to secure his residence and obtain a search
 
 *419
 
 warrant. They did not, through their own actions, create the “do-it-yourself variety” emergency condemned in
 
 Shuey.
 
 The police acted promptly. There was a real danger that defendant, Mollye, a possible confederate, or an innocent bystander, might enter the residence and remove or destroy evidence while the police were obtaining a search warrant.
 

 “Where probable cause to arrest exists and there is danger that incriminating records may be destroyed pending arrival of the warrant, officers are justified in securing the premises under the emergency doctrine.
 
 (People
 
 v.
 
 Freeny,
 
 37 Cal.App.3d 20, 32-34 [112 Cal.Rptr. 33];
 
 Ferdin
 
 v.
 
 Superior Court,
 
 36 Cal.App.3d 774, 781-782 [112 Cal.Rptr. 66].)”
 
 (People
 
 v.
 
 Slocum,
 
 52 Cal.App.3d 867, 879 [125 Cal.Rptr. 442].)
 

 The lower court erred in granting the motion to suppress evidence seized in defendant’s residence during the execution of the warrant upon the basis that the entry into defendant’s residence violated Penal Code section 844 and the securing of the premises was an illegal seizure of the premises. Consequently, even if it were properly before us,
 
 [2]
 
 we could not consider defendant’s contention that his confessions, made while he was being questioned in custody after he was confronted with contraband seized in his residence, were “fruit-of-the-poisonous-tree” and should have been excluded.
 

 Let a peremptory writ of mandate issue directing thé superior court to vacate its order of March 28, 1977, granting the motion to suppress all evidence- seized in the search of his residence pursuant to a search warrant except for the portion of the order suppressing two sets of keys and a Kodak Instamatic camera and its contents (items 7, 8 and 10), and to enter its order denying the motion to suppress except for items 7, 8 and 10.
 

 A petition for a rehearing was denied November 21, 1977, and the petition of the real party in interest for a hearing by the Supreme Court was denied December 22, 1977.
 

 [1]
 

 This observation is based upon the fact that on several occasions the authors of opinions in the Courts of Appeal have attempted partial publication only to have the case decertified by the Supreme Court. However, a ray of hope exists. In
 
 People
 
 v.
 
 James,
 
 19 Cal.3d 99, 118 [137 Cal.Rptr. 447, 561 P.2d 1135], the Supreme Court said, “Defendant’s additional contentions were fully addressed by the Court of Appeal when the case was before that court. With one exception, we agree with the Court of Appeal’s resolution of the issues there presented and therefore reject the contentions as without merit.” Since that opinion of the Court of Appeal exists only in the offices of that Court of Appeal and of the parties to that case, and in West’s California Reporter but not in the Official California Reports, it would appear that the Supreme Court has, in
 
 James,
 
 adopted a modified version of partial publication of an opinion.
 

 [2]
 

 The People, not defendant, petitioned this court for a writ of mandate pursuant to Penal Code section 3538.5, subdivision (o).