[No. F002810. Fifth Dist. Mar. 12, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES RAY DAUGHHETEE, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Parts II, III, IV, V and VI are not published, as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

## COUNSEL

Daniel T. Dauenhauer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Nancy Sweet, Edmund D. McMurray and Thomas Y. Shigemoto, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEST, J.**—In these consolidated cases, defendant, James Ray Daughhetee, appeals from a judgment on a jury verdict finding him guilty in action No. 190017 of robbery (Pen. Code, § 211) and in action No. 190018 of attempted robbery (Pen. Code, §§ 664, 211) and burglary (Pen. Code, § 459). Three prior felonies were charged and found by the jury to be true. Defendant was sentenced to the upper term of five years in state prison for his robbery conviction, plus five years for a prior felony conviction of attempted robbery. The court imposed an additional one-year enhancement for each of defendant's remaining prior felony convictions. A two-year enhancement was stayed pending the completion of the ten-year term. The court also stayed imposition of sentence on the convictions of attempted robbery and burglary until defendant's 10-year term of imprisonment is completed.

On appeal, defendant contends that the trial court committed error in (1) denying defendant's motion to suppress evidence (Pen. Code, § 1538.5); (2) failing to set aside defendant's prior conviction as unconstitutional; (3) ordering physical restraints for defendant throughout the trial; (4) granting defendant's motion to proceed in propria persona; (5) failing to instruct the

jury *sua sponte* on the defense of diminished capacity; and (6) sentencing defendant to the upper term for robbery.

We reject each of defendant's contentions and affirm the judgment.

## FACTS

Defendant does not challenge the sufficiency of the evidence presented at trial to support his convictions. The evidence relating to the motion to suppress is without material dispute and may be summarized as follows:

While on regular patrol duty on February 4, 1983, Sergeant Puthuff, a Modesto city police officer, received a dispatch of an armed robbery committed at a drug store. The dispatcher gave a description of the robbery suspect as a white male, in his early 30's, with a mustache and brown hair. Sergeant Puthuff received a second dispatch, which gave the license number of the getaway car as TBS 479. The car was described as a 1966 Buick, "reddish brown" in color, and was registered to William T. Songer living on Blaker Road. An update dispatch was received later by the sergeant, which described the driver of the car as a white female adult with shoulder-length blond hair.

Sergeant Puthuff believed the vehicle might be located at the residence of Miss Cheri Wilson on Vera Cruz Road. He proceeded to the address and found the suspected robbery car parked in the driveway. At this point, he requested officers from the sheriff's department and the police department to assist him in securing the area. Four sheriff's detectives and three police officers in patrol units arrived within thirty-eight minutes.

Ten minutes after the units arrived, a car pulled up to the house. Miss Wilson left the house and walked to the car. Miss Wilson was a suspect in the robbery, and Sergeant Puthuff thought she might be leaving with evidence, so he pulled his unit behind the car and detained Miss Wilson. The sergeant saw two males looking out the front window. To preserve his and the other officers' safety, Sergeant Puthuff approached the front door to the house. He knocked and announced himself twice, but received no answer. He then opened the door just as Mr. Songer was opening the door. Songer and defendant were found inside and were detained there pending the arrival of the search warrant. No search of the house was made prior to the arrival of the warrant.

## DISCUSSION

## I

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE WAS PROPERLY DENIED

Defendant contends the initial entry by Sergeant Puthuff was improper, thus making unlawful the resulting arrest of defendant and the subsequent search and seizure pursuant to the valid search warrant. Defendant also contends that the residence was secured illegally pending the procurement of the search warrant.

### A. THE INITIAL ENTRY

The crux of defendant's argument concerning the initial entry into his residence is that the circumstances confronting the officers were not sufficiently exigent to justify the warrantless entry.

In *People v. Ramey* (1976) 16 Cal.3d 263, 276 [127 Cal.Rptr. 629, 545 P.2d 1333], the court defined "exigent circumstances" as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." The court recognized that "There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (*Ibid.*)

Here, Sergeant Puthuff received the dispatch of an armed robbery shortly after it was committed. The dispatch included a description of the robber, a description of the vehicle and its license number, and a description of the female driver. Fourteen minutes later, he observed the vehicle at the Vera Cruz residence. He saw Miss Wilson leave the residence and start to enter another vehicle. Sergeant Puthuff knew that drugs and money had been taken from the pharmacy and felt that the female could be leaving with incriminating evidence. Her detention and arrest were, therefore, necessary and reasonable. The officer saw two males looking out the front window of the residence observing the detention of Miss Wilson. Sergeant Puthuff reasonably could conclude evidence might be destroyed within the house. Also, because he knew a gun had been used during the robbery, he reasonably was concerned with the safety of the officers.

We conclude, under the guidelines of *Ramey,* that exigent circumstances did, in fact, exist. Furthermore, unlike the facts in *People v. Shuey* (1975)

13 Cal.3d 835 [120 Cal.Rptr. 83, 533 P.2d 211] relied upon by defendant, the emergency situation confronting the officers here was not created by them. The detention and arrest of Miss Wilson were not orchestrated by the officers. Her leaving the house was unexpected, and Sergeant Puthuff merely reacted to the situation. The actions of the officers in this case were reasonable and not of the "do-it-yourself variety" condemned in *Shuey.*

It is also clear in the instant case that the initial entry into defendant's residence was not for the purpose of securing the premises until a search warrant could be obtained, but was occasioned by the exigent circumstances confronting the officers. (*People* v. *Superior Court (Hulbert)* (1977) 74 Cal.App.3d 407, 418 [141 Cal.Rptr. 497].) In *Hulbert,* the court held that even though an initial entry into the defendant's residence was unlawful because the officers failed to comply with the knock-notice requirements of Penal Code section 844, the securing of the premises for three hours while a search warrant was obtained was reasonable, and evidence seized upon execution of the valid search warrant should not have been suppressed. The court's holding was premised on the finding that "[t]he entry had no demonstrable effect on the issuance of the search warrant." (*Hulbert, supra,* at p. 417.) The same is true in the case at bench.

## B. Securing the Premises

■ Defendant also relies upon *People* v. *Shuey, supra,* 13 Cal.3d 835, for his contention that securing the residence pending procurement of a search warrant rendered the subsequent search pursuant to the warrant illegal. This reliance is misplaced. The *Shuey* court did not hold that the securing of premises pending procurement of a search warrant when exigent circumstances exist was constitutionally impermissible, but rather, upon the facts of that case, that the exigent circumstances were of the "do-it-yourself variety" and created by the police officers themselves. Also, as we noted earlier, the court in *People* v. *Superior Court (Hulbert), supra,* 74 Cal.App.3d 407, held that the securing of premises for three hours while a search warrant was being obtained was reasonable.

California and federal case law holds that premises may be entered and searched as long as probable cause to search plus exigent circumstances are present. (*United States* v. *Rubin* (3d Cir. 1973) 474 F.2d 262, 268-269; *Cleaver* v. *Superior Court* (1979) 24 Cal.3d 297, 302-303 [155 Cal.Rptr. 559, 594 P.2d 984].) In the case at bench, exigent circumstances plus probable cause to search were present. Under *Rubin* and *Cleaver,* then, the police could have entered the premises and conducted a full search without a warrant. Instead of searching the residence, however, the residence and its occupants were secured and the full search conducted only after the

warrant was procured. We deem the securing of premises to be a lesser intrusion on Fourth Amendment rights than a full search. (See *United States* v. *Chadwick* (1977) 433 U.S. 1, 13 [53 L.Ed.2d 538, 549-550, 97 S.Ct. 2476].) If a warrantless search may be upheld on probable cause to search and exigent circumstances, the securing of premises should be allowed on the same basis.

Also, the United States Supreme Court has established that personal property, such as luggage or other containers, may be secured pending the arrival of a search warrant when probable cause to search the property is present and the exigencies of the circumstances called for the seizure. (*United States* v. *Place* (1983) 462 U.S. 696, 700-702 [77 L.Ed.2d 110, 116-117, 103 S.Ct. 2637, 2641]; *Arkansas* v. *Sanders* (1979) 442 U.S. 753, 761 [61 L.Ed.2d 235, 243, 99 S.Ct. 2586]; *United States* v. *Chadwick, supra,* 433 U.S. 1, 13 [53 L.Ed.2d 538, 549-550].)

In the recent case of *United States* v. *Place, supra,* 462 U.S. 696, 703-710, [77 L.Ed.2d 110, 118-123, 103 S.Ct. 2637, 2642-2644], the high court held that exigent circumstances plus a *reasonable suspicion* that luggage contains contraband or evidence of a crime would justify seizure and temporary detention of the luggage for investigative purposes or pending procurement of a search warrant.

The case at bench is, of course, readily distinguishable from the above cases. A residence, unlike luggage, is unlikely to disappear totally. The danger that crucial evidence of a crime will be lost, however, is the same as in a container case. The occupants of the house easily could have destroyed the drugs and money taken from the pharmacy. Securing the premises seems just as reasonable as securing luggage pending the arrival of the search warrant.

Finally, a number of California cases hold that the securing of premises may be based on probable cause to arrest plus exigent circumstances. (*People* v. *Superior Court (Hulbert), supra,* 74 Cal.App.3d 407, 418-419; *People* v. *Freeny* (1974) 37 Cal.App.3d 20, 32-33 [112 Cal.Rptr. 33]; *Ferdin* v. *Superior Court* (1974) 36 Cal.App.3d 774, 781-782 [112 Cal.Rptr. 66].) In these cases, the exigent circumstances or lack thereof appears to be the focus of the decisions. For example, in *People* v. *Freeny,* the court upheld the securing of premises primarily because the destruction of drugs the police knew were located on the premises appeared imminent to the officers. The court noted an additional factor justifying the securement was that probable cause to arrest an occupant of the house was present. (*People* v. *Freeny, supra,* 37 Cal.App.3d at pp. 32-33.) A logical extension of the rule

applied in these cases is to allow the securing of premises based on exigent circumstances and probable cause to search the premises.

We hold that the totality of circumstances presented here distinguishes this case from *People* v. *Shuey, supra,* 13 Cal.3d 835, and that no illegal police conduct so taints the results of the search pursuant to a valid search warrant that those results should be suppressed.

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

VII

We affirm the judgment.

Woolpert, Acting P. J., and Randall, J.,† concurred.

---

*See footnote 1, *ante,* page 574.

†Assigned by the Chairperson of the Judicial Council.