[Crim. No. 6852. Fourth Dist., Div. One. May 8, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JOHN FREUND, Defendant and Appellant.

[Crim. No. 6745. Fourth Dist., Div. One. May 8, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LAWRENCE MURPHY, Defendant and Appellant.

**50**

## COUNSEL

Ernest Borunda, Richard Savitz and Harold F. Tyvoll, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen, Robert M. Foster, Alan S. Meth and Steven V. Adler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COUGHLIN, J.\***—In separate actions defendants entered pleas of guilty to the offense of possession of marijuana; were granted probation; and appeal. The two appeals were consolidated by this court.

The two actions arose out of the same incident. Both defendants moved to suppress evidence pursuant to Penal Code section 1538.5. Both motions were heard and denied by the Honorable Louis M. Welsh. Each defendant entered his plea of guilty before one of two other judges. Defendant Murphy's application for probation was heard and granted by the Honorable Jack R. Levitt, and defendant Freund's application for probation was heard and granted by the Honorable William T. Low. Each order granting probation contained the condition that each defendant: "Submit his person, property, residence, vehicle, personal effects to search at any time, with or without a search warrant by the Probation Officer or any law enforcement officer whether or not such search or detention be the result of controlled substances." The order as to Murphy contained the additional condition that defendant: "Waive his rights pursuant to Section 844 PC & 1531 PC regarding knock and notice procedures by law enforcement officers."

On appeal both defendants contended the court erred in denying their motions to suppress evidence, and defendant Murphy also contends the court erred in including as a condition of probation the requirement he waive his rights pursuant to Penal Code sections 844 and 1531.

On September 8, 1973, shortly before 10 a.m., Police Officer Robert Schry, while making an official stop in the 3100 block of Elm Street, in San Diego, observed what appeared to be growing marijuana plants in a canyon bordering the street. His fellow officer, Robert Cowan, observed growing marijuana plants extending out of a garden of tomato plants behind a house across the canyon. Both officers went into the canyon, on a public walkway, to investigate. Schry pulled up a marijuana plant growing in the canyon. Simultaneously, the officers noticed other marijuana plants growing in a garden, behind a "small little stone wall" 15 feet away, thereafter found to be the rear garden of a house located on Edgemont Street.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

The officers returned to their patrol car; called a supervisor, Sergeant Beaudry, who responded to the call; and were advised by Beaudry an arrest could not be made on the basis of their information as to the growing marijuana plants they had seen, and they should obtain a search warrant.

Following the meeting with Beaudry, Cowan and Schry proceeded to the house on Edgemont Street, to the rear of which was the garden where they had seen marijuana growing. The building contained two levels known respectively as 1812 and 1812½ Edgemont; was built on the slope of a canyon; entrance to the upper level was on Edgemont Street and to the lower level was to the rear of the building, adjoining the rear yard where the growing marijuana had been seen. Cowan and Schry approached the residence from different directions; observed a man, later determined to be Harry Pykor, leave the driveway area; saw him look in the direction from which Schry was approaching, stop suddenly and move his shoulders to the right and left; noted he appeared nervous; asked for his identification, which he furnished, i.e., a driver's license; and obtained a records check indicating he had a history of narcotic activity.

Cowan stayed with Pykor while Schry and Beaudry went through a gate to the backyard; saw defendants near the patio area which adjoins the entrance to 1812½ Edgemont; and requested identification from them. Murphy produced his identification. Freund stated his identification was in the house. Schry asked if he might accompany Freund into the house; was denied admission; and waited outside the door. When Freund exited from the house with his identification Schry detected the odor of marijuana coming from the house and told this to Freund who denied it. Thereupon, i.e., shortly after 10 a.m., the officers placed Murphy, Freund, and Pykor in the back of the patrol car. Cowan sought and obtained a telephonic search warrant. While the warrant was being obtained, the residence was secured, although no one entered. The warrant was issued at about 1:45 p.m. Thereupon, the officers served the warrant; found marijuana; and formally arrested defendants.

■ Both defendants contend the search was illegal because they were detained 3 hours and 45 minutes prior to their arrest and receipt of the search warrant, relying upon the rule stated and applied in *Shuey* v. *Superior Court,* 30 Cal.App.3d 535, 543 [106 Cal.Rptr. 452] and *Willett* v. *Superior Court,* 2 Cal.App.3d 555, 559 [83 Cal.Rptr. 22].

Primary questions are whether defendants were under arrest while held in the patrol car and, if so, whether there was probable cause to arrest them.

Implicit in the orders denying defendants' motions to suppress are findings of all facts, supported by substantial evidence, which are essential to support the order (*People v. Superior Court [Peck]*, 10 Cal.3d 645, 649 [111 Cal.Rptr. 565, 517 P.2d 829]).

One of the officers testified defendants were placed under arrest as soon as they, the officers, found marijuana in the residence searched pursuant to the search warrant. However, the evidence establishes, 3 hours and 45 minutes before this time defendants were taken into custody; placed in the patrol car; and kept there under police guard. This action constituted an arrest (Pen. Code, §§ 834 & 835; *Ferdin v. Superior Court*, 36 Cal.App.3d 774, 781 [112 Cal.Rptr. 66]; *People v. Hatcher*, 2 Cal.App.3d 71, 75 [82 Cal.Rptr. 323]; *People v. Ruiz*, 265 Cal.App.2d 766, 772 [71 Cal.Rptr. 519]; *People v. Terry*, 240 Cal.App.2d 681, 685 [50 Cal.Rptr. 120]; *People v. Gibson*, 220 Cal.App.2d 15, 21 [33 Cal.Rptr. 775]). Under the circumstances, the legality of defendants detention depends upon the existence of probable cause to arrest them at the time they were taken into custody and detained.

When Schry and Cowan reported to Sergeant Beaudry they had observed marijuana plants growing in the rear of the residence, later determined to be 1812 and 1812½ Edgemont Street, and the sergeant advised them an arrest could not be made on the basis of the information they possessed, and suggested they obtain a search warrant, it may be inferred the officer premised his suggestion upon the conclusion knowledge of the growing plants on the premises in question did not justify a belief as to who might be growing the plants. However, the information then possessed justified a further investigation with incident temporary detention of probable suspects (*Terry v. Ohio*, 392 U.S. 1, 22 [20 L.Ed.2d 889, 906-907, 88 S.Ct. 1868, 1880]; *People v. Superior Court [Simon]*, 7 Cal.3d 186, 200 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People v. Mickelson*, 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People v. Griffith*, 19 Cal.App.3d 948, 950 [97 Cal.Rptr. 367]).

Thereafter, the officers saw Pykor leaving the premises; ascertained he had been involved in illegal narcotic activity; contacted defendants for the purpose of ascertaining their identity; in the course thereof detected the odor of marijuana coming from the premises at 1812½ Edgemont,

which the officers learned were occupied by defendants; and obtained a records check indicating Freund had a narcotic violation record. The total information thus obtained justified the belief defendants were growing and in possession of marijuana (*People* v. *Superior Court* [*Peck*], *supra,* 10 Cal.3d 645, 650; *Mann* v. *Superior Court,* 3 Cal.3d 1, 7 [88 Cal.Rptr. 380, 472 P.2d 468]; *People* v. *Lovejoy,* 12 Cal.App.3d 883, 887 [91 Cal.Rptr. 94]).

Defendants contend at the time they were detained in the police car the officers did not believe they had committed a crime; lacking such belief the officers did not have probable cause to arrest, citing *Agar* v. *Superior Court,* 21 Cal.App.3d 24, 29 [98 Cal.Rptr. 148]; for this reason they were not under arrest but illegally detained; and their illegal detention voided the search pursuant to the search warrant, relying on *Shuey* v. *Superior Court, supra,* 30 Cal.App.3d 535 in support of this position.

In *Agar* v. *Superior Court, supra,* 21 Cal.App.3d 24, 29, the court held, to support a finding of probable cause to arrest it must be shown the officers making the arrest believed the person arrested had committed a particular crime.

Evidence of circumstances preceding an arrest may support an inference the officers effecting the arrest believed the person arrested had committed a crime justifying the arrest. In the case at bench there was no direct evidence the officers, at the time defendants were taken into custody, did not believe defendants had committed a crime. In support of their contention the officers detaining them did not believe they had committed a crime, defendants apparently rely upon an assumed inference premised on the fact Sergeant Beaudry had suggested no arrest be made until a search warrant had been issued, and upon the further fact one of the officers testified defendants were arrested after the search under the warrant and "illegal narcotic evidence was found inside the house." It must be noted, however, Beaudry's suggestion was made before the total information supporting a belief defendants were growing and in possession of marijuana, upon which the officers acted in detaining defendants, had been obtained. This information furnished probable cause to arrest, and supports the conclusion defendants detention was an arrest for growing and possessing marijuana. The fact the officers made a formal arrest after their search under the warrant

does not dictate the conclusion defendants were not under arrest while detained in the police car.

In *Ferdin* v. *Superior Court, supra,* 36 Cal.App.3d 774, 781, where a defendant was detained pending receipt of a warrant to search his premises, and the evidence supported a finding of probable cause to arrest at the time the defendant was detained, the court said: "The fact that the officers did not actually announce to Ferdin that they were arresting him and that they did not at once bring him to the police station to be booked, but rather detained him and the other occupants, did not weaken the authority with which they were vested."

In the case at bench the court, in ruling on the motions to suppress, was not required to accept the inference upon which defendants rely. The rule stated in *Agar* v. *Superior Court, supra,* 21 Cal.App.3d 24, 29, is inapplicable. Likewise, the decision in *Shuey* v. *Superior Court, supra,* 30 Cal.App.3d 535, 538-539, upon which defendants rely, also is inapplicable because factually it differs materially from the case at bench. In *Shuey,* officers, acting on information the defendants had narcotics in their apartment, entered the apartment and remained until a search warrant had been issued; the information upon which the officers acted did not constitute probable cause to arrest; in a search under the warrant narcotics were found; thereupon the defendants were arrested; at the hearing on a motion to suppress the People "disavowed any claim there. was a right to make an arrest" at the time of entry; and the court held entry into and occupation of the apartment was illegal.

Defendants also contend the premises were searched before the search warrant had been obtained. The evidence supports a finding, implicit in the order denying the motion to suppress, the search followed receipt of the warrant.

We conclude the orders of the court denying the motions to suppress were proper.

■ On the other hand, we conclude to the contrary respecting the order of the court imposing upon defendant Murphy a condition of probation requiring him to "[w]aive his rights pursuant to Section 844 PC & 1531 PC regarding knock and notice procedures by law enforcement officers."

■ As stated in *Duke v. Superior Court,* 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628]: "The purposes and policies underlying section 844 are fourfold: (1) the protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder."

■ A probationer, conforming to the law, has the right to occupy his home and to permit others to occupy it, jointly or separately, temporarily or permanently. Each of them has the right to protect himself or herself against intruders (generally see *Duke v. Superior Court, supra,* 1 Cal.3d 314, 321). A break in by officers without notice invites a violent confrontation with probable injury to the occupants or the officers. A probationer's waiver of sections 844 and 1531, even assuming it constitutes a consent to police officers to break into his home, at any time, under any circumstances, without notice, "does not affect, or in any way reduce, the danger of confrontation between the homeowner," members of his family, or other occupants of the home, "and the intruder" (*Duke v. Superior Court, supra,* 1 Cal.3d 314, 322). The danger to be avoided is real. The need for preventive measures is great. The Legislature has provided those measures. The courts by indirection should not legislate them out of existence.

In *Parsley v. Superior Court,* 9 Cal.3d 934, 938-939, 940 [109 Cal.Rptr. 563, 513 P.2d 611], it was held, courts are without power to issue search warrants causing unannounced entry by officers into a home. The rationale of this decision dictates the conclusion courts may not equate such action through imposition of a condition of probation.

Although sections 844 and 1531 prescribe the rights and duties of officers in serving arrest and search warrants it has been held "the negative inference" therefrom "serves to bar most unannounced entries and to render inadmissible evidence seized pursuant thereto." (*Parsley v. Superior Court, supra,* 9 Cal.3d 934, 938.)

Assuming a condition of probation waiving a defendant's rights under sections 844 and 1531, in substance, constitutes a waiver of his right to

object to evidence obtained in violation of these sections,[1] the effect thereof is to encourage law enforcement officers to violate the law, whereas the purpose of the exclusionary rule permitting a defendant to object to evidence obtained in violation of the law is to discourage such violation (*People* v. *Cahan,* 44 Cal.2d 434, 445, 449 [282 P.2d 905, 50 A.L.R.2d 513]).

The situation encompassed within a condition of probation requiring a defendant to waive his rights under sections 844 and 1531 is not analogous to the situation encompassed within a condition of probation requiring a defendant to consent to a search without a warrant. A warrantless search without consent, or as an incident to arrest, is illegal. A warrantless search with consent is legal. The condition of probation requiring a defendant to give a blanket consent to future warrantless searches, in effect, legalizes conduct that otherwise would be illegal. A condition of probation requiring such is a reasonable exercise of judicial authority incident to granting probation (*People* v. *Mason,* 5 Cal.3d 759, 764-765 [97 Cal.Rptr. 302, 488 P.2d 630]). On the other hand, a waiver of rights under sections 844 and 1531 does not legalize that which otherwise would have been illegal. At most, the defendant is required to agree he will not object to the officer's illegal conduct. A condition of probation requiring such, in effect, condones violations of law by law enforcement officers; and is not reasonably related to the authority of the court to grant probation.

The order granting defendant Murphy probation is modified by striking therefrom the condition he waive his rights under Penal Code sections 844 and 1531; and as modified is affirmed. The order granting defendant Freund probation is affirmed.

Ault, Acting P. J., and Whelan, J.,* concurred.

A petition for a rehearing was denied May 21, 1975, and the petition of appellant Murphy for a hearing by the Supreme Court was denied July, 16, 1975.

---

[1]Under the rule noted in *Parsley* v. *Superior Court, supra,* 9 Cal.3d 934, 938, the right to object would attach whether the officers were serving a warrant or entering pursuant to a condition of probation requiring advance consent to search. It may be assumed the intent of the probation condition requiring a waiver of sections 844 and 1531 was to counter the latter objection.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.